DECISION AND JUDGMENT ENTRY
{¶ 1} Traci Schwendeman ("Mother") appeals the judgment of the Washington County Court of Common Pleas, Juvenile Division, denying her motion to modify custody of her daughter, Baylee Nicole Schwendeman (DOB: July 3, 1997). Mother contends that the trial court abused its discretion by refusing to hold an oral evidentiary hearing on her motion pursuant to R.C. 3109.04. Additionally, Mother contends that the court abused its discretion by finding that she failed to allege a change of circumstances pursuant to R.C. 3109.04(E)(1)(a). Because we find that Mother indeed failed to allege a change in the circumstances of Baylee or Baylee's residential parent, Stacy Gorham ("Father"), we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} In February 1998, the Washington County Child Support Enforcement Agency issued an administrative order establishing Father's parentage of Baylee. In April 1998, Baylee's maternal grandparents, Larry and Carol Schwendeman ("the *Page 2 
Schwendemans"), filed a petition for custody of Baylee and obtained a temporary custody order. Thereafter, Father answered the Schwendemans' petition and filed his own complaint for custody. Mother opposed the efforts of Father and the Schwendemans and sought to continue legal custody of the child. On July 12, 2000, the trial court issued a decision and judgment entry, wherein it granted Mother custody of Baylee and standard visitation to Father.
 {¶ 3} In February 2004, Mother was convicted of felony charges and sentenced to a term of imprisonment in the Ohio Reformatory for Women. Mother left Baylee in the Schwendemans' care. Then, in July 2004, Father filed a motion to modify custody and a request for temporary orders. The Schwendemans also petitioned the court for custody of Baylee.
 {¶ 4} Mother did not enter an appearance or otherwise participate in the 2004 proceedings regarding Baylee's custody, except to file a consent to placement of Baylee's custody with the Schwendemans. At the hearing on the motions, Father and the Schwendemans presented testimony from numerous witnesses regarding their respective relationships with Baylee, their suitability to care for Baylee, and Mother's corresponding unsuitability. No one presented any evidence tending to demonstrate that Mother remained suitable to parent Baylee.
 {¶ 5} The court appointed a guardian ad litem ("GAL"), who testified that she spoke with the parties, as well as numerous other persons with relevant information. The GAL testifed that she visited Father and Baylee at Father's residence, and found the residence very suitable for Baylee. She noted that Baylee had her own room, and *Page 3 
that the home was clean and picked up. She described Father's relationship with Baylee as affectionate and comfortable. She believed that Baylee loves her Father, and stated she has no concerns about Baylee living with him. The GAL testified that she had concerns about Baylee living with Mother because of Mother's history and instability. She also testified that she believed that the Schwendemans offer Baylee a secure and stable home, and that she had no concerns about the Schwendeman home.
 {¶ 6} The GAL also testified that, based upon her experience with children and families, the disruption of moving from the Schwendemans' home to Father's home would cause Baylee the same short term difficulty such a move would cause any child. But, the GAL opined that the benefits of Baylee living with her Father outweigh those difficulties. The GAL stated that if there is an opportunity for children to live with their parents, they should do so.
 {¶ 7} Finally, the GAL testified that some animosity exists between Father and the Schwendemans, noting that neither party appears to respect the role that the other plays in Baylee's life. She indicated that it is in Baylee's best interest for each family to respect the importance of the other in Baylee's life.
 {¶ 8} The magistrate issued a decision, which the trial court later approved over the objections of both parties. Therein, the court applied R.C. 3109.04(E) and found that a change of circumstances occurred as the result of Mother's incarceration. In determining Baylee's best interest, the court noted that Baylee has been integrated into the Schwendemans' home since birth, and found that there was no evidence that Mother's incarceration detrimentally effected Baylee. Accordingly, the court found that *Page 4 
there were numerous advantages to leaving Baylee in her current environment, where she has flourished, including the following: (1) Baylee would continue to attend the same school she has attended since kindergarten; (2) Baylee would continue to be surrounded by a very supportive extended family; (3) Baylee would continue her close relationship with her brother, Aaron; (4) Baylee could continue her relationships with her neighbors; (5) Carol does not work outside the home and is available at all times to care for Baylee, making daycare with non-family members unnecessary.
 {¶ 9} While the court found the advantage of granting Father custody would be that Baylee would spend time with Father every night, it also found the following disadvantages: (1) Father's environment offers Baylee isolation from what she has grown up with; (2) Baylee would have to attend a new school in a new county; (3) Baylee would have to take a bus from school to a daycare center before Father picked her up after work; (4) If Father has to work late, Baylee would have to stay with a nonfamily member until Father could pick her up; (5) Baylee would most likely spend school vacations in daycare instead of with family members; (6) Father has only one week of vacation available each year; (7) During the in camera interview, Baylee expressed concerns regarding her fear of the large dogs in Father's neighborhood, and expressed her belief that Father does not like his neighbors.
 {¶ 10} Based upon the foregoing, the court found that advantages of granting custody to Father did not outweigh the harm caused by removing Baylee from her current environment. While recognizing that Mother had many legal difficulties, the court noted that she also has "the assistance of her parents who have been willing and *Page 5 
able to assist [Mother] with insuring that Baylee has a stable and secure environment." The court found that Baylee's positive personality was the result of her placement with the Schwendemans, and, therefore, found that modification of the existing custody order was not in Baylee's best interest. Accordingly, the court denied Father's custody motion.
 {¶ 11} The court went on to consider the Schwendemans' petition for custody. In doing so, court specifically found that both Father and Mother were suitable parents, although it noted that Mother's suitability "is based on great part on her family's willingness to assist her with Baylee while she is in prison." Because it found that both parents are suitable parents, the court denied the Schwendemans' petition for custody.
 {¶ 12} Both Father and the Schwendemans appealed the decision maintaining the award of custody to Mother and denying the petitions of Father and the Schwendemans. Father alleged that the trial court's determination that Mother was suitable to parent Baylee was contrary to the manifest weight of the evidence. We sustained Father's assignment of error, finding that the record contained no evidence that Mother is a suitable parent, and substantial evidence that she is not a suitable parent. See In re: Schwendeman, Washington App. Nos. 05CA18 and 05CA25,2006-Ohio-636 (Schwendeman I"). The Schwendemans asserted that the court erred in determining that Father is suitable to parent Baylee. We overruled their assignment of error, finding that the trial court did not abuse its discretion in determining that any detriment caused by the change of environment does not rise to a sufficient level to *Page 6 
render Father unsuitable. Id. Therefore, we affirmed the trial court's decision in part, reversed in part, and remanded the cause for further proceedings. Id.
 {¶ 13} Upon remand, the trial court entered judgment consistent with our decision in Schwendeman I. Specifically, by entry dated February 10, 2006, the trial court granted Father's motion to modify custody, designated Father the residential parent and legal custodian of Baylee, and denied the Schwendemans' petition for custody. None of the parties appealed this decision.
 {¶ 14} Thirty-four days later, on March 16, 2006, Mother filed a motion to modify custody pursuant to R.C. 3109.04(E)(1)(a). In her motion, Mother requested a modification on the ground that a change of circumstances had occurred. Specifically, Mother alleged in her motion that she had completed her prison sentence and overcome her drug problem since the court's last hearing. Father filed a motion to dismiss Mother's motion for modification.
 {¶ 15} On May 9, 2006, the court issued an entry finding that, pursuant to R.C. 3109.04(E)(1)(a), it could not order a modification of custody unless there was a change of circumstances in the child, in the child's residential parent, or in the case of a shared parenting decree, in either of the parents. Since the parties were not subject to a shared parenting decree, the court concluded that Mother must allege a change in the circumstances of Baylee or Father in order for the motion to be tenable on legal grounds. The court allowed Mother ten days to supplement her motion with supporting affidavits regarding the threshold issue of whether or not there had been a change of *Page 7 
circumstances of the child or her custodial parent, and granted Father seven days to respond to Mother's supplemented motion.
 {¶ 16} In her supplement to her motion to modify custody, Mother alleged a significant change in the circumstances of Baylee. Specifically, Mother alleged that: (1) Baylee's schedule and school had changed, such that Baylee must attend daycare before and after school and no longer walks home from school with her brother; (2) Baylee's physical health had been jeopardized by Father's introduction of a house cat into their home; (3) Baylee's mental health had been jeopardized, in that she become withdrawn and quiet around her siblings and the Schwendemans; (4) Baylee missed family celebrations of Easter and her sister's birthday; (5) Baylee's family environment has changed from one in which she was surrounded by aunts and uncles, cousins, siblings, and many friends to one of relative isolation; and (6) Baylee has developed a negative view of Catholicism. In addition, Mother alleged a change in Father's circumstances, in that: (1) he discontinued attending Alcoholics Anonymous meetings; (2) he expressed dislike for the Catholic Church, the Schwendemans, and Mother; (3) he has, on occasion, permitted Baylee to sleep in his bed with him; and (4) he denied Easter visitation and threatened to deny mid-week visitation with Mother.
 {¶ 17} Father responded to Mother's supplemental memorandum, arguing that all of the changes in circumstances Mother alleged were either known to the court at the time of its previous custody determination or occurred as a direct result of that custody determination. In particular, Father noted that, at the hearing on his motion to modify custody, Baylee's GAL opined that Baylee would experience temporary difficulties as *Page 8 
she transitioned from living with the Schwendemans to living with Father. Additionally, Father noted that the record from the prior hearing showed that: (1) he is a Protestant, not a Catholic; (2) he and the Schwendemans have a contentious relationship; and (3) he is a recovering alcoholic. Father also argued that Mother's remaining allegations regarding events that occurred after he assumed custody of Baylee do not constitute "changes of circumstance" as contemplated by R.C. 3109.04 because the changes are not of substance and did not have a material effect on Baylee.
 {¶ 18} The magistrate issued a decision, which the trial court adopted via entry, finding that Mother failed to allege a change in the circumstances of Baylee or Father that was of substance and had a material effect on Baylee. The court noted that the majority of allegations that Mother claims as evidence of a change of circumstance were a direct result of the court's order transferring custody of Baylee to Father. Additionally, the court noted that the fact that Father and the Schwendemans do not respect each other or each other's religion was evident at the previous custody hearing. Finally, the court found that a temporary change in Baylee's mental health was anticipated by the court based on the GAL's report, and that it was not yet possible to ascertain whether any change in Baylee's mental health could be considered a change in circumstance. The court concluded that it would be unfair to Baylee to require her to endure another hearing when Mother's motion ultimately must fail on legal grounds. Therefore, the court concluded that Mother failed to allege a change in the circumstances of Baylee or Father, and the court dismissed Mother's motion to modify custody without a hearing. *Page 9 
 {¶ 19} Mother appeals, asserting the following assignments of error: "I. The trial court abused its discretion when it failed to hold an evidentiary hearing pursuant to R.C. 3109.04. II. The trial court abused its discretion when it failed [to] find that appellant had alleged a change of circumstances pursuant to R.C. 3109.04(E)(1)(A)."
 II. {¶ 20} Mother contends that the trial court's decision denying her motion to modify custody constitutes an abuse of discretion because the court failed to conduct a hearing on the motion. Mother further contends that she set forth facts establishing a change in the circumstances of Baylee and Father. Because Mother's assignments of error are interrelated, we address them together.
 {¶ 21} A trial court enjoys broad discretion in custody proceedings.Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph one of the syllabus. This is due, in part, to the fact that "custody issues are some of the most difficult and agonizing decisions a trial judge must make." Id. at 418. We will not disturb a trial court's custody determination unless the court abused that discretion. Miller v.Miller (1988), 37 Ohio St.3d 71, 74. An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219;Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
 {¶ 22} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights. R.C. 3109.04(E)(1)(a) provides in relevant part: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that *Page 10 
were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."
 {¶ 23} The change in circumstances "must be a change of substance, not a slight or inconsequential change." Davis at 418. The court must remain mindful that "[t]he clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." Id., quoting Wyss v.Wyss (1982), 3 Ohio App.3d 412, 416.
 {¶ 24} Mother, citing this court's decision in Snouffer v.Snouffer (1993), 87 Ohio App.3d 89, contends that the trial court erred in failing to conduct an evidentiary hearing on the issue of the allocation of parental rights and responsibilities. R.C. 3109.04(A) provides, in pertinent part: "[I]n any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents * * * the court shall allocate the parental rights and responsibilities for the care of the minor children * * *." (Emphasis added).
 {¶ 25} In Snouffer, we held that "[R.C. 3109.04(A)] clearly indicates that there is to be a hearing where both parents may testify before there is any allocation of parental rights and responsibilities, including an order for shared parenting. * * * [W]hen the *Page 11 
allocation of parental rights and responsibilities is contested, a hearing must be granted." Id. at 91-92. (Emphasis sic). Similarly, inBurns v. Webb (Oct. 9, 1998), Athens App. No. 97CA45, we held that "[t]he allocation of parental rights and responsibilities, whether it be an original determination made at the time of divorce, or a modification thereof * * * can only be made on the basis of "facts" in evidence. This requires a hearing where witnesses can be examined and, more importantly, crossexamined. It simply cannot be made solely on the basis of uncontested attestations in an affidavit." (Citations omitted.)
 {¶ 26} While we explicitly decline to depart from our holdings inSnouffer and Burns, we nonetheless conclude that the trial court need not hold a hearing every time a parent moves for modification of custody. Where the motion does not include allegations that meet the threshold legal requirements that permit the court to consider the modification, the allocation of parental rights and responsibilities is not truly "contested," and the hearing requirement outlined inSnouffer and Burns is not triggered. See, e.g., Wysong v. Wysong, Preble App. No. CA2001-06-011, 2002-Ohio562, ("Because appellant failed to allege a change of circumstances which would permit a modification of parental rights and responsibilities under R.C. 3109.04, we find that the trial court did not abuse its discretion by finding no change of circumstances and denying an evidentiary hearing on the matter.") See also Bebout v. Vittling (Nov. 19, 2000), Stark App. No. 2001CA00169, (finding no abuse of discretion in denying an evidentiary hearing when trial court found that the movant's allegations were similar to those litigated during the previous custody hearings.) *Page 12 
 {¶ 27} We find that the trial court did not err in refusing to hold a hearing in this instance. The cases Mother cites in support of her argument all involve situations in which the trial court was required to weigh evidence and resolve factual disputes in order to allocate parental rights and responsibilities. Here, Mother's motion failed on legal grounds. Mother failed to allege the threshold change in circumstances required to trigger a need to weigh evidence.
 {¶ 28} Contrary to Mother's assertion that a change in circumstances occurred, her factual allegations are similar or identical to the facts known to the court at the time it awarded custody to Father. The court considered at length the impact of vesting custody of Baylee with Father and recognized that Baylee would likely suffer some temporary detriment if Father became her residential parent. In fact, these temporary detrimental changes are the very same ones that the trial court attempted to avoid when it continued Mother's status as Baylee's residential parent despite her imprisonment, thereby granting de facto custody to the Schwendemans. As we noted in Schwendeman I, the court's desire to avoid such negative consequences is understandable, but temporary detriment like that which Mother alleges does not trump the right of a suitable natural parent to raise his child. Id. at ¶ 25. The record makes clear that the court anticipated some negative impact upon Baylee, and therefore these changes cannot constitute a change in circumstances so close in time to the previous order. Additionally, the record reflects that the court was aware of the animosity between Father and the Schwendemans and the fact that neither respects the role of *Page 13 
the other in Baylee's life. Thus, these allegations cannot support a finding of a change in circumstances.
 {¶ 29} Mother's remaining allegations, relating to visitation on Easter, Father's failure to attend AA meetings, and Baylee's physical health, are notable for what they fail to allege. Mother does not contend that she was entitled to court ordered visitation with Baylee on Easter, does not allege that Father has suffered a relapse in his alcoholism, and does not allege that Baylee's allergy to the cat has caused Baylee significant discomfort. Mother's allegations, while inflammatory at first blush, do not amount to changes of substance in Baylee's circumstances.
 {¶ 30} Because Mother failed to allege a change of circumstances which would permit a modification of parental rights and responsibilities under R.C. 3109.04, we find that the trial court did not abuse its discretion by finding no change of circumstances and denying an evidentiary hearing on the matter. Accordingly, we overrule Mother's assignments of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Dissents.
 Harsha, J.: Concurs in Judgment Only. *Page 1