[Cite as *Barton v. Barton*, 2015-Ohio-5194.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


LORI BARTON                          :        JUDGES:
                                     :
                                     :        Hon. Sheila G. Farmer, P.J.
        Plaintiff-Appellant          :        Hon. Patricia A. Delaney, J.
                                     :        Hon. Craig R. Baldwin, J.
-vs-                                 :
                                     :        Case No. 15-CA-13
                                     :
WESLEY BARTON                        :
                                     :
                                     :
                                     :
        Defendant-Appellee           :        O P I N I O N


CHARACTER OF PROCEEDING:             Appeal from the Fairfield County Court
                                     of Common Pleas, Domestic Relations
                                     Division, Case No. 12 DR 417



JUDGMENT:                            AFFIRMED



DATE OF JUDGMENT ENTRY:              December 9, 2015



APPEARANCES:

For Plaintiff-Appellant:                      For Defendant-Appellee:

JAMES R. KINGSLEY                             DAVID L. ROWLAND
157 West Main Street                          10705 Snyder Church Rd.
Circleville, OH 43113                         Baltimore, OH 43105

*Delaney, J.*

{¶1}   Plaintiff-Appellant Lori Barton appeals the February 23, 2015 judgment entries of the Fairfield County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellant Lori Barton ("Mother") and Defendant-Appellee Wesley Barton ("Father") were married on June 18, 2005. One child was born as issue of the marriage: L.B., born on March 4, 2008.

{¶3}   In March 2012, Father moved out of the marital home. Mother remains in the marital home. Mother filed a complaint for legal separation with children on August 21, 2012. Mother requested the trial court name her as residential parent and legal custodian of L.B. On October 16, 2012, Father filed an answer and counterclaim for divorce. Mother and Father filed motions for temporary orders.

{¶4}   On October 18, 2012, the magistrate issued temporary orders naming Father as the residential parent and legal custodian of L.B. Mother was granted parenting time in accordance with Fairfield County Local Rule 17.

{¶5}   Mother filed a motion to modify temporary orders on November 20, 2012. She requested the trial court name her as residential parent and legal custodian. A hearing was held before the magistrate on January 28, 2013. On January 29, 2013, the trial court denied Mother's motion to modify the temporary orders.

{¶6}   Mother filed an amended complaint for divorce on May 13, 2013. Mother also filed a proposed shared parenting plan that designated her as the school placement parent, child support obligee, would cause Father to notify Mother prior to scheduling any medical appointments, and called for parenting time to be by agreement

or in the alternative for her to have the majority of parenting time. Father did not file a proposed shared parenting plan.

{¶7}   A trial on Mother's amended complaint and Father's counterclaim for divorce was held before the magistrate on September 20, 2013. The focus of this appeal is the trial court's award of custody to Father. At trial, the following evidence was adduced as to the custody of L.B.

{¶8}   Since September 2009, Father has been employed as the chief of police of Lithopolis, Ohio. His hours of employment are from 7:00 a.m. to 3:00 p.m., Monday through Friday. Mother is employed with UPS. Mother works Monday through Friday, from 2:00 a.m. to 8:00 a.m.

{¶9}   When L.B. was approximately two years old, L.B. was enrolled in a church-operated preschool for a few hours, one day a week. Father felt L.B. was not receiving the appropriate level of socialization and removed her from the church preschool. In 2012, L.B. was approximately three years old when Father enrolled L.B. into a private childcare facility named Sunnyside Childcare. Father was responsible for the tuition. Sunnyside provides childcare and educational programs for infants, toddlers, and preschool-aged children. L.B. attended preschool at Sunnyside from 7:00 a.m. until 12:15 p.m. on Mondays, Tuesdays, Wednesdays, and Fridays.

{¶10} Father testified he was concerned with L.B.'s mental development. She appeared to him to be delayed in her speech development and social skills when compared to her peers. He was very concerned L.B. had autism. Father had L.B. tested for hearing problems, allergies, and heart issues to rule out medical causes for her developmental delays. L.B. suffered from five ear infections within a six-month period.

Her family physician did not recommend getting tubes placed in her ears, but Father took L.B. to a pediatric ENT for a second opinion. Mother acknowledged that L.B. had speech delays, but felt L.B. would outgrow them because she herself had outgrown childhood speech delays. She testified she felt Father was taking L.B. to the doctor too often.

{¶11} After approximately one year with Sunnyside, Mother enrolled L.B. into the afternoon preschool program at Walnut Elementary in the Teays Valley Local School District, Fairfield County, Ohio. Walnut Elementary was close to Mother's home. L.B. was evaluated between August 2012 and October 2012 by the Teays Valley Local School District. In a report dated October 5, 2012, it was determined through a multi-disciplinary evaluation that L.B. was developmentally delayed and had deficits in her fine motor skills, receptive, expressive, social communication, and social skills. The school recommended L.B. be enrolled in a special needs classroom to interact with adults and peers and to have speech/language therapy and occupational therapy. L.B. was given an individualized education program ("IEP") to meet her educational needs. Mother and Father both participated in the evaluation.

{¶12} When Father left the marital home, Father moved into a two-bedroom apartment in Groveport, Franklin County, Ohio. On October 18, 2012, the magistrate issued temporary orders naming Father as the residential parent and legal custodian of L.B. Father was informed by the Teays Valley Local School District that because Father was named the residential parent, L.B. could no longer attend Walnut Elementary because Father resided outside of the school district. Father enrolled L.B. in the preschool program at Sedalia Elementary in the Groveport Madison Local School

District, Franklin County, Ohio. Sedalia Elementary was not as close to Mother's home. L.B. receives speech and occupational therapy at Sedalia Elementary based on her IEP. Mother testified L.B. expressed that she missed her friends at Walnut Elementary. Mother also testified Teays Valley Local School District was a higher-rated school district that Groveport Madison Local School District. Father felt Sedalia Elementary did a better job with L.B.'s IEP than Walnut Elementary.

{¶13} Father requested L.B. be evaluated by Nationwide Children's Hospital. On September 9, 2013, L.B. received a diagnostic assessment that noted L.B. was developmentally delayed and had language and fine motor delays and self-stimulating behaviors. It was recommended that L.B. be assessed by a developmental pediatrician, psychologist, and speech pathologist. After the September 20, 2013 trial, Father submitted to the trial court the assessment by the Child Development Center of Nationwide Children's Hospital. The report found L.B.'s symptoms were consistent with Mixed Expressive/Receptive Disorder and motor coordination deficits, and a lack of appropriate social skills. The results of the testing were not consistent with Autism Spectrum Disorder.

{¶14} At the time of the hearing and while L.B. was enrolled in Sunnyside Childcare and Sedalia Elementary, the parents' schedule was as follows. Father brought L.B. to Sunnyside Childcare at 7:00 a.m. Mother picked up L.B. from Sunnyside around 12:15 p.m. and drove her to Sedalia Elementary for afternoon preschool. Father picked up L.B. from Sedalia Elementary. Father had custody of L.B. from Sunday at 6:00 p.m. to Wednesday at 3:30 p.m. On Wednesdays, Mother had custody of L.B. from

3:30 p.m. to Thursday at 3:30 p.m. Mother had custody of L.B. from Friday at 11:30 a.m. to Sunday.

{¶15} The magistrate had a hearing on June 11, 2014 based on Mother's motion filed January 29, 2014.

{¶16} On June 24, 2014, the magistrate granted the parties' divorce. The magistrate named Father as the residential parent and legal custodian of L.B. After reviewing the factors under R.C. 3109.04, the magistrate determined the shared parenting plan submitted by Mother was not in the best interests of L.B. The magistrate found Father was more motivated than Mother to work with the medical and educational professionals to help L.B. with her developmental delays.

{¶17} Mother filed objections to the magistrate's decision on July 2, 2014 and September 24, 2014.

{¶18} On February 23, 2015, the trial court overruled Mother's objections. The trial court issued the Final Decree of Divorce on February 23, 2015. It is from this judgment Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶19} Mother raises seven Assignments of Error:

{¶20} "I. DID THE TRIAL JUDGE COMMIT PREJUDICIAL ERROR BY FAILING TO MAKE A PROPER, DE NOVO, INDEPENDENT REVIEW OF THE MAGISTRATE'S DECISION?

{¶21} "II. DID THE DELAY OF NINE MONTHS BY THE MAGISTRATE TO ISSUE HER DECISION AND THE DELAY OF FOUR MONTHS BY THE JUDGE TO RULE ON OBJECTIONS (17 MONTHS TOTAL ALLOWING FOR TRANSCRIPT AND

BRIEFING – 30 MONTHS FROM FILING TO FAO) DENY PLAINTIFF HER CONSTITUTIONAL RIGHT TO DUE PROCESS TO REDRESS AND FOR INJURY UNDER THE OHIO CONSTITUTION?

{¶22} "III. WAS IT PREJUDICIAL ERROR NOT TO RECUSE THE MAGISTRATE FOR BIAS?

{¶23} "IV. WAS IT PREJUDICIAL ERROR TO CONSIDER POST-FILING EVIDENCE TO DECIDE CUSTODY?

{¶24} "V. WAS IT PREJUDICIAL ERROR TO AWARD CUSTODY OF [L.B.], D.O.B. 3/4/08 TO FATHER AND TO REFUSE TO ACCEPT MOTHER'S SHARED PARENTING PLAN?

{¶25} "VI. WAS IT PREJUDICIAL ERROR TO ORDER STANDARD VISITATION INSTEAD OF SPECIFIC VISITATION IN ACCORDANCE WITH UNDISPUTED PAST PRACTICE?

{¶26} "VII. WAS IT PREJUDICIAL ERROR TO PLACE THE CHILD IN DAYCARE WHEN MOTHER WAS AVAILABLE AND CLAIMED THE RIGHT TO FIRST SIT?"

**ANALYSIS**

**I. Independent Review of the Trial Court**

{¶27} Mother argues in her first Assignment of Error that the trial failed to make an independent, do novo review of the magistrate's decision. We disagree.

{¶28} Civ. R. 53(D)(4)(d) provides that in ruling on objections to a magistrate's decision, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and

appropriately applied the law. *Williams v. Tumblin*, 5th Dist. Coshocton No. 2014CA0013, 2014-Ohio-4365, ¶ 35. "A presumption of regularity attaches to all judicial proceedings." *State v. Raber*, 134 Ohio St.3d 350, 2012–Ohio–5636, 982 N.E.2d 684, ¶ 19. Appellate courts thus presume that a trial court conducted an independent analysis in reviewing a magistrate's decision in accordance with Civ.R. 53(D)(4)(d) and the party claiming that the trial court did not do so bears the burden of rebutting the presumption. *Faulks v. Flynn*, 4th Dist. Scioto App. No. 13CA3568, 2014–Ohio–1610, ¶ 27. This burden requires more than a mere inference, and simply because a trial court adopted a magistrate's decision does not mean that the court failed to exercise independent judgment. *Id.*

{¶29} The trial court overruled Mother's objections to the magistrate's decision on February 23, 2015. In its judgment entry, the trial court states that pursuant to Civ.R. 53(D)(4)(d), the court shall undertake an independent review of the objected matters to ascertain whether the magistrate has properly determine the factual issues and appropriately applied the law. The trial court noted the transcripts of the hearings held before the magistrate were filed with the court for the purposes of the non-oral hearing on Mother's objections to the magistrate's decision.

{¶30} Mother's argument that the trial court failed to exercise independent judgment rests on the fact that the court failed to specifically address all of her arguments in support of her objections to the magistrate's decision. The trial court's failure to agree with Mother or to specifically discuss every factor weighing into the decision does not rebut the presumption that the trial court conducted an independent

analysis in accordance with Civ. R. 53(D)(4)(d). *Williams v. Tumblin*, 2014-Ohio-4365, ¶ 37.

{¶31} Mother's first Assignment of Error is overruled.

## II. Date of Trial Court's Judgment

{¶32} Mother argues in her second Assignment of Error that the timing of the trial court's judgment entry denied Mother her constitutional right of due process.

{¶33} Mother originally filed the action on August 21, 2012. L.B. was four years old. The matter went to trial on September 20, 2013. The magistrate issued her decision on June 24, 2014. The trial court overruled Mother's objections to the magistrate's decision and issued the final decree of divorce on February 23, 2015. At the time of this appeal, L.B. is approximately seven years old and is attending full-day elementary school.

{¶34} Mother argues the untimeliness of the trial court violated her constitutional right of due process. She argues because of the delay in rendering its judgment, the trial court's decision is no longer applicable to L.B. because of the child's growth and maturation.

{¶35} This Court has previously addressed the challenge of rendering an opinion in a custody case based on the passage of time between the inception of a case and the final order. *See Mitchell v. Manders*, 5th Dist. Morrow No. 14CA0011, 2015-Ohio-1529, ¶ 71 (at the time of the trial court's full hearing, the child was in first grade and by the appellate decision, the child was 11 years old and in the fourth grade). The Court is tasked with reviewing the facts in evidence and determining whether there was competent and credible evidence to support the trial court's decision on custody.

{¶36} In this case, the trial court determined it was in the best interests of the child that Father be named the residential parent and legal custodian. The trial court's decision was based primarily on L.B.'s documented developmental delays and the differences between the parents' ability and desire to meet the needs of L.B.'s developmental delays. While time has passed between the full hearing, the trial court's final order, and this appeal, the basis of the trial court's determination of custody is still ripe for our review.

{¶37} Mother's second Assignment of Error is overruled.

### III. Magistrate Bias

{¶38} Mother contends in her third Assignment of Error that the magistrate assigned to hear the matter was biased; therefore, the magistrate should have recused herself from the case.

{¶39} At the January 28, 2013 hearing on Mother's motion to modify temporary orders, the magistrate stated her child was special needs and she understood the IEP process. It was Mother's argument at the trial court level that Father was unnecessarily taking L.B. to numerous doctors to search for a diagnosis to explain L.B.'s developmental delays. Mother argues that because of the magistrate's personal history, the magistrate was biased towards Father.

{¶40} Mother does not dispute that she did not raise this issue before the trial court through a motion to disqualify. She states the issue was only discovered upon a review of the January 28, 2013 transcript in preparation of her objections to the magistrate's decision. She raised the argument in support of her objection to the magistrate's decision as to custody.

{¶41} The proper method to challenge a magistrate's impartiality is to file a motion for disqualification with the trial court. *Lingenfelter v. Lingenfelter*, 9th Dist. Wayne No. 14AP0005, 2015-Ohio-4002, -- N.E.3d --, ¶ 10. Civ.R. 53(D)(6) specifically provides that, "[d]isqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court."

{¶42} There was no motion before the trial court to disqualify the magistrate for bias. When Mother discovered the alleged bias of the magistrate, Mother did not file a motion to disqualify or raise the issue as a separate objection to the magistrate's decision. As such, we find the matter to be waived.

{¶43} Mother's third Assignment of Error is overruled.

## IV. Post-Trial Evidence

{¶44} Mother argues in her fourth Assignment of Error that it was prejudicial error for the trial court to consider evidence filed after the final hearing in order to determine custody.

{¶45} On January 29, 2014, Mother filed a post-hearing motion. In response to Mother's post-hearing motion, Father submitted the results of the Interdisciplinary Assessment Results conducted by Nationwide Children's Hospital along with other evaluations conducted to determine L.B.'s developmental status. Mother argues it was prejudicial error for the trial court to consider such evidence submitted after the full hearing.

{¶46} A review of the transcript of the June 11, 2014 hearing before the magistrate shows that Mother took the opposite position and requested the magistrate take judicial notice of the report from Nationwide Children's Hospital. (June 11, 2014 Tr.,

p. 73). Counsel stated, "we're going to ask that you take – either mark as an exhibit or take judicial notice of the Children's report that came in late * * * and consider that as part of the case." *Id.* The magistrate agreed that it was part of the record. *Id.*

{¶47} Accordingly, we overrule Mother's fourth Assignment of Error.

### V. Best Interests of the Child

{¶48} Mother argues the trial court abused its discretion when it rejected Mother's proposed shared parenting plan and awarded custody of L.B. to Father. We disagree.

{¶49} In any divorce proceeding, the court shall "allocate the parental rights and responsibilities for the care of the minor children of the marriage." R.C. 3109.04(A). In this case, Mother filed a proposed shared parenting plan pursuant to R.C. 3109.04(G). If at least one parent files a pleading or motion in accordance with R.C. 3109.04(G) and a plan for shared parenting, the trial court must determine whether the plan for shared parenting is in the best interest of the child. R.C. 3109.04. The approval of a shared parenting plan is discretionary with the court. R.C. 3109.04. If the court does not determine that any filed shared parenting plan is in the best interest of the child, the court shall not approve any plan. R.C. 3109.04.

{¶50} R.C. 3109.04(F)(1) sets forth the following factors for the court to consider when determining the best interests of a child in allocating parental rights:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division

(B) of this section regarding the child's wishes and concerns as to the

allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶51} Custody issues are some of the most difficult decisions a trial judge must make. When reviewing a ruling pertaining to the allocation of parental rights, the trial court is to be afforded great deference. *Tipton v. Tipton*, 5th Dist. Fairfield No. 13-CA-

19, 2013-Ohio-4901, ¶ 19 citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus.

{¶52} In the magistrate's decision, the magistrate reviewed in detail each factor under R.C. 3109.04(F) to determine the best interest of the child. L.B. was too young at the time of the full hearing to interview. A guardian ad litem was not appointed in this case. The evidence in this case supports the trial court's conclusion that Mother loves L.B. and wants the best for her, but Father was more motivated to address L.B.'s medical and educational needs to help L.B. with her documented developmental delays.

{¶53} We find the trial court did not abuse its discretion in finding the proposed shared parenting plan submitted by Mother was not in the best interest of L.B.

{¶54} Mother's fifth Assignment of Error is overruled.

## VI. Local Rule 17 Parenting Time with Mother

{¶55} The trial court ordered that Mother would have parenting time of not less than Fairfield County Local Rule 17, as well as such other times as the parties agree. Once L.B. started kindergarten, the Wednesday overnight would be contingent upon Mother transporting L.B. to school on Thursday. In the summer, Mother would have the child while Father was working, except for those times L.B. was in Sunnyside Childcare or a similar program, or when Father worked in the evening. Mother was responsible for transportation from Sunnyside to her home.

{¶56} Mother argues the trial court should have ordered parenting time based on past practices of the parties, which was in evidence, rather than on Local Rule 17.

{¶57} A review of the trial court's final decree of divorce shows that it provided for adjustment of the parenting time by agreement of the parties. The testimony of Mother and Father shows that they adjusted parenting time based on agreement. Further, the testimony of the parties as to parenting time was substantially similar to the schedule outlined in the final decree.

{¶58} Mother's sixth Assignment of Error is overruled.

### VII. Daycare

{¶59} Mother argues in her seventh Assignment of Error that it was error to allow Father to place L.B. in Sunnyside Childcare when Mother was available to watch L.B.

{¶60} The parties have noted that at the time of this appeal, L.B. is currently attending full-day kindergarten. Mother argues L.B. should not be enrolled in Sunnyside Childcare during the summer.

{¶61} Mother cites to *In re Schwendeman*, 4th Dist. Washington Nos. 05CA18, 05CA25, 2006-Ohio-636, in support of her contention that daycare is an unreasonable situation. The court stated, "[w]hile it may be desirable for a child to spend that time with family members rather than in daycare, we cannot find that the trial court abused its discretion in declining to find that Father's need to utilize daycare services rendered him unsuitable to parent Baylee. Indeed, if Father's employment and resulting need for daycare services rendered him unsuitable, virtually every working parent would be unsuitable to care for their own children when compared with an unemployed or retired grandparent seeking custody. As the *Davis* and *Troxel* courts noted, the state cannot infringe on a parent's fundamental right to make child rearing decisions simply because

a 'better' decision could be made. *Davis* at ¶ 15, citing *Troxel*, 570 U.S. at 72–73." *Id.* at ¶ 59.

{¶62} There is no dispute that Nationwide Children's Hospital diagnosed L.B. with Mixed Expressive/Receptive Disorder, motor coordination deficits, and a lack of appropriate social skills. It was recommended that L.B. be given opportunities to socialize with her peers and receive speech and occupational therapy. Father enrolled L.B. in Sunnyside Childcare because it provided socialization for L.B. in a preschool setting. Based on L.B.'s diagnosis, we find no abuse of discretion for the trial court to order that in the summer, Mother would have the child while Father was working, except for those times L.B. was in Sunnyside Childcare or a similar program, or when Father worked in the evening.

{¶63} Mother's seventh Assignment of Error is overruled.

## CONCLUSION

{¶64} Mother's seven Assignments of Error are overruled.

{¶65} The judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Baldwin, J., concur.