[Cite as *Powell v. Lawson*, 2019-Ohio-4993.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bryant O. Powell, | : | |
| Plaintiff-Appellant, | : | Nos. 18AP-289 |
| | | and 18AP-360 |
| v. | : | (C.P.C. No. 10JU-17377) |
| Ashley N. Lawson, | : | (REGULAR CALENDAR) |
| Defendant-Appellee | : | |

D E C I S I O N

Rendered on December 5, 2019

**On brief:** *The Anelli Law Firm, LLC*, and *Dianna M. Anelli*, for appellant. **Argued:** *Dianna M. Anelli*.

**On brief:** *Mark K. Sabath*; *Williams & Schoenberger Co., LLC*, and *Susan S.R. Petro*, for appellee. **Argued:** *Susan S.R. Petro*.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BROWN, J.

{¶ 1} In these consolidated appeals, Bryant O. Powell ("father"), plaintiff-appellant, appeals from several judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. In a March 21, 2018 judgment, the trial court denied father's "Motion to Recuse" the magistrate (more properly a motion for disqualification of magistrate, pursuant to Civ.R. 53(D)(6), infra). In an April 23, 2018 judgment, the trial court overruled father's objections to a magistrate's decision deciding numerous motions. In a January 21, 2016, judgment, the trial court denied several of father's motions regarding a December 10, 2015 magistrate's order granting a motion to

quash. In a May 21, 2015 judgment, the trial court denied several of father's motions regarding a March 18, 2015 magistrate's order that addressed various guardian ad litem ("GAL") issues.

{¶ 2} Father and Ashley N. Lawson ("mother"), defendant-appellee, were never married. Mother gave birth to their son on August 26, 2006. Father lives in California and mother lives in Ohio. On January 4, 2012, the parties entered into an agreed judgment entry, which designated mother as the sole residential parent and legal custodian and granted father parenting time.

{¶ 3} On May 5, 2014, father filed a motion to reallocate parental rights and responsibilities. Three years and many, many pleadings later, a 17-day hearing was held before a magistrate on the motion to reallocate, as well as numerous other motions, which will be discussed in the assignments of error as necessary.

{¶ 4} After the trial before the magistrate concluded, father filed a motion to recuse the magistrate.

{¶ 5} On February 13, 2018, with regard to the motion to reallocate parental rights and responsibilities, the magistrate issued a decision. Both parties filed objections to the magistrate's decision. The parties did not file a transcript of the 17-day hearing to support their objections.

{¶ 6} On February 28, 2018, father's motion to recuse the magistrate was heard by the trial court. At trial, four witnesses testified on behalf of father as to the magistrate's alleged bias. On March 21, 2018, the trial court denied father's motion to recuse the magistrate.

{¶ 7} On April 23, 2018, the trial court overruled both parties' objections to the magistrate's February 13, 2018 decision. Father appealed both judgments. In these consolidated appeals, father asserts the following assignments of error, renumbered sequentially for ease of discussion:

> [I.] The trial court abused its discretion in failing to recuse Magistrate Reedus.
>
> [II.] The trial court erred when it ruled that the evidence did not show that Magistrate Reedus harbored a hostile feeling or spirit of ill will toward Bryant and Ms. Anelli.

[III.] The trial court erred when it ruled that Magistrate Reedus had not formed fixed anticipatory judgments on several issues of fact.

[IV.] The trial court abused its discretion when it failed to conduct a de novo review of the magistrate's decision.

[V.] The trial court erred in holding Bryant in Contempt for failure to pay child support and/or failure to pay uncovered medical expenses.

[VI.] The trial court erred in sanctioning Bryant $2,500 payable to Ashley for increasing GAL fees for requesting the GAL's removal.

[VII.] The trial court abused its discretion when it made findings about child support that were not supported by the record.

[VIII.] The trial court abused its discretion in quashing plaintiff's subpoenas seeking cash flow documentation for child support calculation purposes.

[IX.] The trial court abused its discretion when it failed to hold Ashley in contempt for failure * * * to ensure telephone calls and visitation with Bryant.

[X.] The trial court violated plaintiff's fundamental Due Process and Equal Protection rights when it reduced Bryant's parenting time from one weekend per month to one weekend per quarter without a showing of unfitness or abuse.

{¶ 8} The first three assignments of error relate to the trial court's March 21, 2018 denial of father's motion to recuse the magistrate. Father does not raise a specific, separate argument with regard to the first assignment of error, but only argues generally that the trial court erred when it denied his motion to recuse the magistrate. Father's second and third assignments of error present specific arguments. Therefore, we will address father's second and third assignments of error first before reaching the ultimate question raised in the first assignment of error.

{¶ 9} Pursuant to Civ.R. 53(D)(6), "[d]isqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." Thus, "[t]he proper method to challenge a magistrate's impartiality is to file a

motion for disqualification with the trial court." *Barton v. Barton*, 5th Dist. No. 15-CA-13, 2015-Ohio-5194, ¶ 41. A magistrate is presumed not to harbor bias or prejudice against a party, so the party alleging bias must set forth evidence to overcome the presumption of integrity. *Melick v. Melick*, 9th Dist. No. 26488, 2013-Ohio-1418, ¶ 9. A magistrate is biased or prejudiced against a party if she harbors "a hostile feeling or spirit of ill will * * * toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the [magistrate], as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus. Generally, mere disagreement or dissatisfaction with a ruling does not demonstrate bias or prejudice. *In re Disqualification of Corrigan*, 105 Ohio St.3d 1243, 2004-Ohio-7354, ¶ 9.

{¶ 10} In the present case, father argues in his second assignment of error the trial court erred when it ruled the evidence did not show the magistrate harbored a hostile feeling or spirit of ill will toward him and his counsel. He presents myriad examples and arguments to support his claim. Father first asserts the magistrate's remarks that: she knew mother complied with visitation and followed the orders as best she could, father's attorney violated a court order, and father and his attorney have not followed any of the court orders reveal such a high degree of favoritism and antagonism as to make fair judgment impossible. We have reviewed the passage in the transcript in which the magistrate stated to father at the March 1, 2016 hearing that she did not "appreciate the fact that you have -- you have not followed any of the Court's orders," when discussing father's apparent ability to pay for experts but not the GAL fees. (Mot. to Recuse at 13.) However, we agree with the trial court that there is reasonable ground for criticism when a party claims an inability to pay the GAL but is somehow able to pay an expert's fee during trial. Furthermore, insofar as father alleged in his motion to recuse that the magistrate stated to mother, "I know that you have complied with the visits, you've followed the order as best you can," at a June 2, 2017 hearing, the trial court correctly found this allegation was unsupported by a record; thus, there is no way to determine if this is an accurate recitation of the magistrate's statement or the context of the statement.

{¶ 11} Father next argues the magistrate improperly discounted the testimony of all four of his witnesses regarding the magistrate's bias. Father asserts these witnesses

supported the conclusion that the magistrate's judicial remarks at trial were critical, disapproving, unfair, mean, condescending, intolerant, antagonistic, and hostile toward father for no discernable reason. The four witnesses were: (1) Shana Powell-Sevigny; (2) Maey Emam; (3) Barbara Luke; and (4) father.

{¶ 12} Powell-Sevigny, father's sister, testified she attended about ten minutes of the hearing before the magistrate, but was told to leave the courtroom before any testimony took place. She testified that, outside the courtroom during a break, the magistrate told father and his counsel to hurry and return to the courtroom, while she more politely asked mother and her counsel to return to the room, although she admitted she did not hear all of the conversation. She stated the magistrate's tone was loud and rude. She also stated she saw the magistrate talking to mother's attorney in a hallway and thought it was obvious they were talking about the case when no one else was around, and she thought it showed bias against father. She stated she agreed with everything she averred to in her affidavit, but admitted father's attorney wrote it for her and she just read it and had it notarized. Although she did not mention it in her affidavit, and she testified she did not hear the content of the conversation between the magistrate and mother's attorney in the hallway, she testified at trial she thought the judge said something about "fishing." She also admitted she did not hear any testimony because she was asked to leave the courtroom, and when she was in the courtroom, she really was not paying attention to everything said.

{¶ 13} Emam, who was a 16-year-old high school student when she attended the hearing for 90 minutes on March 1, 2016 as part of a high school project, took notes on what she observed in the courtroom. In her notes, she asked rhetorically why the court was biased. She also indicated the court was angry at father's persistency. She thought the magistrate was annoyed with father's counsel but not with mother's counsel. She noted it was very obvious that no one in the court was a fan of father's attorney. She testified it appeared people were annoyed with father's attorney from the start, and the magistrate favored mother from the start. She also testified that although the magistrate looked annoyed and rolled her eyes when father answered his cell phone and walked out of the courtroom at the beginning of the hearing, she thought it was an appropriate reaction by the magistrate.

{¶ 14} Luke, a lawyer and professional friend of father's counsel, testified father had retained her to complete GAL duties, although she had not been appointed by the court and was not on the court-appointed list in Franklin County. Because of this, she testified before the magistrate only as a fact witness and not a GAL. She was on the witness stand before the magistrate for 30 to 45 minutes. She stated she believed the magistrate was biased against father's counsel and in favor of mother's counsel in this case. The magistrate appeared exasperated and fed up with father's counsel for no reason, rolling her eyes and looking toward opposing counsel for affirmation about father's counsel. Luke called the courtroom toxic and hostile toward father and his counsel but not toward mother and her counsel. She said the magistrate was overly solicitous, overly approving, and favorable toward mother and her counsel.

{¶ 15} Father testified the magistrate's decision favored mother 100 percent. He stated the magistrate rolled her eyes at him all the time and implied the custody issues were his fault. Father stated the magistrate was very disrespectful toward his attorney, was annoyed with her, was hostile toward her, and yelled at her a lot. He stated the magistrate denied a lot of evidence that would have shown the child is happy when with him. He also testified the magistrate favored mother and her attorney, looking to mother's attorney for approval and gesturing to him that father's attorney does not know what she is talking about. He stated he was nervous, anxious, and scared every time he went before the magistrate; however, the magistrate treated mother respectfully and politely. He also thought the magistrate prejudged his case, pointing to the way he and his counsel were treated and the final decision, which was 100 percent in favor of mother. The magistrate also blamed him and his attorney for the failure to negotiate a settlement.

{¶ 16} After reviewing the above testimony, we find the trial court did not err. The trial court discounted the testimony of the four witnesses for rational, valid reasons. Emam, the 16-year-old high school student, only observed 90 minutes of a 17-day trial and lacked any legal background or courtroom experience. Powell-Sevigny's testimony was vague and without context, particularly her allegations of ex-parte communications and the "fishing" comment. With regard to her claim that the magistrate and mother's counsel were overly friendly in the hallway, the trial court acknowledged that, although Powell-Sevigny might have been put-off by the friendly banter, she presented insufficient

testimony to demonstrate ex-parte communications took place. As for Luke, she was admittedly a "professional friend" of father's counsel and was not a neutral party. The trial court also noted it had never seen a party retain an alternative GAL to start an investigation prior to being appointed, and Luke spent a limited time observing the magistrate's demeanor. As for father, he too was not a neutral witness to the magistrate's behavior, and he was understandably frustrated with the case and being unable to spend more time with his child. Therefore, even if the magistrate exhibited the gruff and impatient behavior father claims, his witnesses did not demonstrate the magistrate prejudged the case or was biased against him.

{¶ 17} Father also argues the magistrate's refusal to allow witnesses to testify at the November 20, 2015 hearing was so extreme it displayed a clear inability to render a fair judgment. Father wished to call mother to identify and authenticate checks demonstrating the need for the subpoenas to F. Joseph Tate, mother's friend who gave her financial assistance, and his financial institutions. Father claims it was outrageous to quash subpoenas without hearing evidence from mother, the one person in a position to testify about the facts requiring their issuance. We disagree. The magistrate was within her discretion to control the hearing on the motion to quash Tate's subpoena. In denying his request to call mother as a witness, the magistrate stated it was not a trial but only a hearing on a motion to quash, she understood father's position, father's counsel had already taken mother's and Tate's deposition, and father would be able to challenge mother's testimony on Tate's financial assistance at trial. The magistrate ultimately granted the motion to quash on the bases that the subpoenas were overbroad, asked for confidential information, and were unclear. We find no error in this reasoning.

{¶ 18} Father next argues the magistrate exhibited extreme behavior and the inability to render a fair judgment when she refused to allow father's attorney to proffer evidence at the August 1, 2017 trial so as to preserve the issue on appeal. Although we have only a portion of the transcript available in the record pertinent to this issue, it appears father's counsel wished to recall father to the stand at this hearing, and the magistrate refused to allow her to do so. The magistrate declined the request to proffer on the basis that father's counsel already had the opportunity to question father on the desired issues when he was originally on the stand. Whether permission from the trial

court is necessary to place a proffer on the record at some point (perhaps at the end of the day) is not before us. Here, although a proffer of evidence may have been proper, it is difficult for this court to discern precisely what precipitated the request by father's counsel to recall father as a witness, given the lack of a full transcript. Thus, we cannot adequately review this argument. We can find no bias in the magistrate's refusal to allow father's counsel to proffer evidence.

{¶ 19} Father presents a multitude of additional claimed instances of bias and maltreatment: (1) the magistrate unnecessarily disparaged his attorney by telling her she violated the order of the court in retaining Tate's financial documents, but then later acknowledged that the magistrate's order regarding such might have been vague and confusing, (2) the magistrate disparaged his attorney by stating she has not followed any court orders with regard to the magistrate's order for father to pay the GAL $944, (3) the magistrate threatened that she will be reviewing whatever attorney fees may or may not be paid with respect to the motion to quash, (4) the magistrate disparaged father when she reprimanded him on the stand, treated him like a child, instilled fear and anxiety in him, demeaned him, and yelled at him at nearly every court appearance, (5) the magistrate disparaged him when she "bullied" him at the March 1, 2016 hearing, trying to get him to make a payment to the GAL, which he could not afford and the GAL did not request, and (6) the magistrate threatened him that she would reallocate fees at the end of the case. We have reviewed all the above arguments and the corresponding portions of the transcript available in the record, and we do not find any of these instances demonstrate bias that resulted in the magistrate's inability to render an impartial determination. To be sure, the record suggests the magistrate, on multiple occasions, was frustrated with arguments raised by father's counsel, but there is simply no evidence this frustration resulted in judicial bias that affected the integrity or outcome of the proceedings. For these reasons, we overrule father's second assignment of error.

{¶ 20} Father argues in his third assignment of error the trial court erred when it ruled the magistrate had not formed a fixed anticipatory judgment on several issues of fact. Father claims the following demonstrate the magistrate's fixed anticipatory judgment: (1) prior to hearing the evidence, the magistrate already decided that mother had complied with the visits and followed the court orders as best she could, (2) the

magistrate stated she disagreed with father's argument at the November 20, 2015 hearing on the motion to quash subpoenas to Tate before hearing any testimony, and later stated she did not need all the testimony because she thought the subpoenas were overbroad from the beginning, and (3) the magistrate stated father and/or his attorney had not followed any court orders in the context of pressing father to make a payment to the GAL that he could not afford to make and the GAL had not requested. We have already addressed these issues above and determined none of these demonstrate bias. We also find they do not demonstrate the magistrate formed a fixed anticipatory judgment. The case has an extensive pleading history, and the magistrate's comments in these instances essentially demonstrate the magistrate's familiarity with the case and the parties' respective arguments on the various contested issues. We find father's argument without merit and overrule his third assignment of error. Furthermore, because we have overruled his second and third assignments of error, we also must overrule his first assignment of error.

{¶ 21} Assignments of error four through ten relate to the remaining appealed judgments. We first note that, with regard to the trial court's April 23, 2018 decision overruling father's objections to the magistrate's February 13, 2018 decision, father did not file a transcript with the trial court of the 17-day hearing before the magistrate to support his objections. Loc.R. 8(1) of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, provides in relevant part as follows:

> If a finding of fact or weight of the evidence is part or all of the basis for the Objection, a transcript of the testimony is necessary to support the Objection to the Magistrate's decision and must be filed with the Court. Partial transcripts may be permitted upon leave of the Court.
>
> Failure to file a transcript when one is required by this Rule is a basis for dismissal of the Objections.

{¶ 22} Juv.R. 40(D)(3)(b)(iii) provides:

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * The objecting party shall file the transcript or affidavit with

the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

{¶ 23} In the present case, father argues in his fourth assignment of error the trial court abused its discretion when it failed to conduct a de novo review of the magistrate's decision. Father contends that, even though he failed to file a complete transcript of the hearing, the trial court erred when it failed to review any exhibits admitted into evidence. Father asserts that without a full transcript, a trial court is duty bound to review the exhibits entered into evidence to conduct a de novo review. Father believes the exhibits he relies on to support his objections speak for themselves and do not need any support from the transcript.

{¶ 24} Juv.R. 40(D)(4)(d) provides:

If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.

{¶ 25} Thus, the application of Juv.R. 40(D)(4)(d) requires de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. *In re J.P.*, 10th Dist. No. 16AP-61, 2016-Ohio-7574, ¶ 21, citing *Jones v. Smith*, 187 Ohio App.3d 145, 2010-Ohio-131 (4th Dist.). The juvenile court may not defer to the magistrate in the exercise of its de novo review. *Id.* An appellate court presumes that a trial court performed an independent analysis of a magistrate's decision. *See Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, ¶ 47 (4th Dist.). As such, the party asserting error must affirmatively demonstrate the trial court failed to conduct such independent analysis. *Arnold v. Arnold*, 4th Dist. No. 04CA36, 2005-Ohio-5272, ¶ 31; *Mahlerwein* at ¶ 47.

{¶ 26} Here, father has not affirmatively demonstrated the trial court failed to perform an independent analysis and review the entire record, including the exhibits. In the trial court's decision, the court found father's objections relied on factual findings

made by the magistrate and the partial transcripts in the record were insufficient to conduct a de novo review of the relevant evidence related to the objections. The trial court then specifically indicated that, after a de novo review of the decision and objections, the magistrate did not err as a matter of law. In conclusion, the court indicated:

> Having reviewed the objection, the decision of the Magistrate, the pleadings of the parties, the lengthy oral arguments by Bryant's counsel, the partial transcripts, and the Court's own file, and after an independent assessment of the evidence, this Court finds that the Magistrate did not err.

(Apr. 23, 2018 Decision at 4.)

{¶ 27} From the above, we must conclude the trial court undertook a de novo review of the entire record, including any exhibits. Father fails to direct us to any authority requiring the trial court to set forth a detailed list of all evidence reviewed. Father having failed to affirmatively demonstrate that the trial court did not conduct a de novo review, we must presume regularity and conclude the trial court performed an independent analysis of the magistrate's decision. Therefore, father's fourth assignment of error is overruled.

{¶ 28} Father argues in his fifth assignment of error the trial court erred when it held him in contempt for failure to pay child support and/or failure to pay uncovered medical expenses. On review, an appellate court will not reverse a trial court's determination regarding contempt proceedings absent an abuse of discretion. *Hopson v. Hopson*, 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 9, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981). The term "abuse of discretion" is more than an error of law or judgment; rather, it implies that the court's attitude is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 29} In the present case, father first argues the magistrate abused her discretion when it found him in contempt in the February 13, 2018 decision for failing to pay for his share of out-of-pocket medical expenses, pursuant to the January 4, 2012 agreed judgment entry. Father argues that, as of the date that his $129.85 reimbursement to mother was due to be paid to her, he had already overpaid child support by $1,846.29. Thus, father claims he could not be found in contempt for non-payment of the out-of-

pocket medical expenses when he had overpaid child support by a greater amount at the time the reimbursement was due.  Father presents no authority to support a finding that a court abuses its discretion when it finds a child support obligor in contempt for non-payment of out-of-pocket medical expenses when the obligor has a child support overage. Although the court may utilize the equitable principle of set-off in certain situations, father fails to cite any authority requiring the magistrate to do so under the present circumstances.  Simply put, father does not contest that he failed to pay mother for the out-of-pocket medical expenses pursuant to the terms of the court order.  Father was in contempt, and the magistrate did not err in finding him in contempt.

{¶ 30} Father next argues the magistrate erred when she found him in contempt for failure to pay child support in the February 13, 2018 decision because his substantial overpayment in child support covered subsequent underpayments in child support. Father faults the magistrate for failing to make an arrearage calculation or a finding that father is in arrears.  We disagree.

{¶ 31} The parties entered into an agreed judgment entry on July 31, 2013 which modified the child support order. Father was to pay child support in the amount of $968.06 per month, plus processing charge, effective May 1, 2013.  Mother filed a motion for contempt on December 22, 2014 alleging father was not paying his child support on a consistent basis.  In reviewing father's child support payments from August 1, 2013 to December 22, 2014, the magistrate found father failed to pay consistent, monthly payments in the ordered amount, but he made substantial payments in some months, which assisted in lowering the amount of arrears.  Although father argues herein that the magistrate should have made an arrearage calculation, failed to state the dates of his supposed arrearages, and should have applied his overpayments to arrearages rather than to current child support, father conflates the issues before the magistrate. Mother's contempt motion was based, in relevant part, on father's failure to consistently pay his monthly child support obligation. On appeal, father does not deny he failed to consistently pay his monthly child support for the period under review by the magistrate, and by his own exhibit submitted to the court, it is apparent he did not pay the ordered $968.06 per month for numerous months during the pertinent period.  " 'Default' means any failure to pay under a support order that is an amount greater than or equal to the amount of

support payable under the support order for one month." R.C. 3121.01(B). Here, in numerous months during the pertinent period under review, father failed to pay an amount greater than or equal to $968.06, which was the amount of support payable under the support order for one month. Therefore, father was in default and subject to contempt for those months. His overpayments in other months and his overages for any given period are irrelevant to the contempt determination. Therefore, this argument is without merit.

{¶ 32} Finally, father argues the magistrate erred when she awarded attorney fees pursuant to the contempt findings. A trial court has discretion to include reasonable attorney fees as part of costs taxable to a party found guilty of civil contempt. *Grundey v. Grundey*, 10th Dist. No. 13AP-224, 2014-Ohio-91, ¶ 34, citing *State ex rel. Fraternal Order of Police v. Dayton*, 49 Ohio St.2d 219 (1977), syllabus. This discretion exists, even in the absence of statutory authority empowering a court to include attorney fees as part of the costs. *Fraternal Order of Police* at 228-29. Here, father first asserts that, because the magistrate erred when she held him in contempt, it likewise was error to award mother attorney fees. However, given our above determination that the magistrate did not err in finding him in contempt, the magistrate could properly make an award of attorney fees. As for father's argument that the award of attorney fees was abusive because it did not leave him with sufficient funds to maintain his own well-being, the sole authority he cites in support, *Colley v. Colley*, 10th Dist. No. 09AP-333, 2009-Ohio-6776, ¶ 63, does not involve a contempt motion, but rather domestic relations litigation, and the specific holding cited does not support his above contention. Furthermore, the magistrate here was able to look at the record before the court and use her own knowledge and experience to determine the reasonableness of mother's attorney fees request. *Ward v. Ward*, 10th Dist. No. 85AP-61 (June 18, 1985) (a trial court is able to evaluate, in a large measure, the work performed by an attorney in a domestic relations case by merely looking at the record before the court); *Tonti v. Tonti*, 10th Dist. No. 03AP-494, 2004-Ohio-2529, ¶ 110, citing *Ward* (a trial court can use its own knowledge and experience in determining the necessity and reasonableness of attorney fees). For the foregoing reasons, we overrule father's fifth assignment of error.

{¶ 33} Father argues in his sixth assignment of error the trial court erred in sanctioning him $2,500 for increasing the GAL fees by requesting the GAL's removal. On this issue, the magistrate found that father unnecessarily increased the GAL fees on more than one occasion. As an example, the magistrate cited father's motion to remove the GAL, which necessitated a four-day hearing to have the current GAL removed and replaced by someone who was not authorized to serve as a GAL in Franklin County. The court then ordered father to reimburse mother $2,500 toward the GAL fees she had already paid.

{¶ 34} Father argues that Loc.R. 27(L)(2) of the Franklin County Court of Common Pleas, Domestic Relations, Juvenile Branch, allows a party to move for removal of the GAL and calls for a hearing on the matter. To support the appropriateness of his motion, father claims the GAL indicated she would not be able to perform all the tasks necessary to complete the GAL report prior to the trial date, so he asked Luke, an attorney formerly on the GAL appointed counsel list, if she could perform the tasks by the trial date, and she confirmed she could. He asserts there is no sound reasoning to sanction a party for doing what the law allowed, and there was no evidence he did anything that resulted in the unilateral increase of GAL fees.

{¶ 35} A trial court may allocate GAL fees based on which party caused the work of the GAL and the parties' litigation success. *Karales v. Karales*, 10th Dist. No. 05AP-856, 2006-Ohio-2963, ¶ 21, citing *Jarvis v. Witter*, 8th Dist. No. 84128, 2004-Ohio-6628, ¶ 100, citing *Marsala v. Marsala*, 8th Dist. No. 67301 (July 6, 1995). The trial court has discretion over the allocation to either or both of the parties. *Id.*, citing *Davis v. Davis*, 55 Ohio App.3d 196, 200 (8th Dist.1988). Here, the trial court found that, on more than one occasion, father unnecessarily increased the GAL fees, and an example of such was his attempt to replace the current GAL with someone who was not authorized to serve as a GAL in Franklin County, necessitating a four-day hearing on the matter. The transcript of the hearing on the motion for appointment of a new GAL is not in the record before us, so we are unable to review what transpired at the hearing. However, the magistrate denied the motion, giving one example of the way father unnecessarily increased the GAL fees. The magistrate could have reasonably believed that it was premature to file a motion and force a hearing on replacing the current GAL with a GAL who was not on the approved list

of GALs for Franklin County at the time of the motion and hearing. Father has not shown an abuse of discretion.

{¶ 36} Furthermore, with regard to father's contention that he should not be required to pay these GAL fees based on the disparity of income between the parties and his insufficiency of funds to cover his own wellbeing, this court has held there is no authority for the proposition that a trial court is required to consider the parties' incomes and earning abilities in allocating GAL fees, although the court may allocate GAL fees based on the parties' economic status. *In re A.A.C.W.*, 10th Dist. No. 13AP-618, 2014-Ohio-2903, ¶ 22-23. For these reasons, we find no abuse of discretion, and we overrule father's sixth assignment of error.

{¶ 37} Father argues in his seventh assignment of error the trial court abused its discretion when it made findings about child support that were not supported by the record. Father first argues the magistrate should have included as part of mother's gross income, for purposes of calculating child support from May 4, 2014 through April 26, 2016 as shown in magistrate exhibit 1, the amounts deducted for contribution to the State Teacher's Retirement System ("STRS"), as they come within the definition of R.C. 3119.01(C)(7). In support, father cites *Heuer v. Heuer*, 10th Dist. No. 92AP-1512 (June 8, 1993). In *Heuer*, the father argued the trial court erred by including in his gross income the deduction taken from his income as a contribution to STRS. We found that former R.C. 3113.215(A)(2) defined gross income as the total of all earned or unearned income from all sources, and the money the father contributed to STRS was taken from his earned income. We further held that no provision of the child support guidelines excluded a contribution, such as the father's STRS contribution, from gross income. We noted that former R.C. 3113.215(B)(3)(e), which permitted a court to consider mandatory deductions from wages as a factor in determining whether to deviate from the amount of support calculated pursuant to the worksheet, expressly excluded from consideration deductions that are made for retirement in lieu of social security. Therefore, we found the trial court did not err when it included the fathers STRS contributions in his gross income.

{¶ 38} Former R.C. 3119.01(C)(7), which applies here and is similar to former R.C. 3113.215(A)(2), defined "gross income" as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable." Under

former R.C. 3119.01(C)(7)(d), "gross income" did not include "[a]mounts paid for mandatory deductions from wages * * * but not taxes, social security, or retirement in lieu of social security."

{¶ 39} After a review of the relevant statutes and *Heuer*, we find the trial court here abused its discretion when it failed to include mother's STRS contributions in her gross income for purposes of calculating child support from May 4, 2014 through April 26, 2016 as found in magistrate exhibit 1. Mother's counterarguments are unconvincing. Former R.C. 3119.01(C)(7) 's definition of "gross income" is very broad, and although former R.C. 3119.01(C)(7)(d) 's language excepting "retirement in lieu of social security" from the exclusion from gross income for any amounts paid for mandatory deductions from wages does not specifically require that mandatory deductions for "retirement in lieu of social security" be included in gross income, its exception from the exclusion in R.C. 3119.01(C)(7)(d) is telling. Furthermore, our decision in *Heuer* makes clear that STRS should be included in gross income for purposes of child support calculation. Our decision in *Heuer* is also supported by the Seventh Appellate District's decision in *Staffrey v. Smith*, 7th Dist. No. 09-MA-107, 2010-Ohio-1296, ¶ 30, in which the court found that the trial court should have included the father's contributions to the Ohio Public Employees Retirement System as part of his gross income for purposes of calculating child support. For these reasons, we find the magistrate erred.

{¶ 40} Father next argues the magistrate erred when she did not include the financial contributions that Tate gave mother as part of mother's income, finding that the contributions were not consistent and regular. Former R.C. 3119.01(C)(7)(e) provided that "gross income" did not include "[n]onrecurring or unsustainable income or cash flow items." Former R.C. 3119.01(C)(8) provided that "nonrecurring or unsustainable income or cash flow item" meant an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" did not include any item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years. *Id.*

{¶ 41} Regarding child support matters, the trial court has considerable discretion and will not be reversed absent an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386,

390 (1997). Here, on the issue of Tate's payments to mother, we cannot find an abuse of discretion. The determination of gross income is a factual finding, which is normally reviewed using the "some competent, credible evidence" standard. *Scott G.F. v. Nancy W.S.*, 6th Dist. No. H-04-015, 2005-Ohio-2750, ¶ 43, citing *Thomas v. Thomas*, 6th Dist. No. L03-1267, 2004-Ohio-1034, and *Jajola v. Jajola*, 8th Dist. No. 83131, 2004-Ohio-370. However, where there exist incomplete transcripts on appeal, an appellate court's review of factual findings is limited to determining only whether the trial court's method of calculation was appropriate. *Id.*

{¶ 42} Here, the trial court's method for calculating gross income was appropriate. The magistrate reviewed Tate's full deposition and found that Tate indicated he only gave mother financial assistance as the need arose, and he did not give her consistent money on a regular basis. In his deposition, Tate testified he gave mother money during the period in question, 2014-2015, and had been doing so since 2006. He stated they were gifts that mother had no expectation to receive and were provided in his sole discretion. Tate solely determined when he would give her financial assistance, and mother never asked him for money. Tate testified he would give mother money when she was in need to pay for her apartment. He stated there was a short period of time that he was giving her money fairly regularly, when she was unemployed, but there were other long periods where he did not provide her money. He stated he planned to give her money as long as she needed it and he was able to give it. Therefore, Tate's overall testimony was that his payments were at his whim when he felt mother needed help, and mother had no expectation of continuing payments from him. Under these circumstances, and given our standard of review, we will not substitute our judgment for that of the trial court, and we conclude the trial court did not abuse its discretion when it refused to include Tate's payments in mother's gross income. For these reasons, father's seventh assignment of error is sustained in part and overruled in part.

{¶ 43} Father argues in his eighth assignment of error the trial court abused its discretion when it quashed father's subpoenas seeking cash flow documentation for child support calculation purposes. However, given our determination under father's seventh assignment of error that Tate's payments to mother did not constitute "gross income" for purposes of calculating child support, father's argument that the trial court abused its

discretion when it quashed father's subpoenas is moot at this juncture. Therefore, father's eighth assignment of error is rendered moot.

{¶ 44} Father argues in his ninth assignment of error the trial court abused its discretion when it failed to hold mother in contempt for failure to ensure telephone calls and visitation with father. With regard to father's motion for contempt filed September 19, 2014, father asserted mother failed to follow the terms of the January 4, 2012 agreed judgment entry when she failed to ensure the child spoke with father on the phone two times per week. Likewise, father argues on appeal that the magistrate erred when she failed to find mother in contempt for failing to encourage the child to speak with father. In her decision, the magistrate found mother did not violate the terms of the 2012 agreed entry, as the agreement does not require her to do anything specific and does not provide for make-up calls if they are missed. The magistrate stated that, while mother may have violated the spirit of the entry, she did not violate the letter of the entry. Although father tries to term his claimed error on appeal as one being solely legal in nature, i.e., that the legal standard is that mother must encourage the child to speak with father, the issue is very much dependent on the testimony at trial, for which we have no transcript. The magistrate found father's testimony relating to the calls was unclear, and mother's and father's testimony regarding the calls seemed to be conflicting, rendering a full and proper review of the issue on appeal impossible.

{¶ 45} Regardless, insofar as father claims purely legal error, we agree with the magistrate that there was no clear order in the agreed entry that mother violated. The two cases cited by father do not persuade us otherwise. In *Bonner v. Bonner*, 2d Dist. No. 2009 CA 10, 2010-Ohio-742, ¶ 37, the court found that the evidence showed the mother failed to allow "free communication," as required by the court order, between the father and children. Here, the agreed entry did not require anything particular of mother with regard to phone calls, and the evidence was unclear as to her cooperation or lack thereof. In *Eichenberger v. Eichenberger*, 10th Dist. No. 97APF12-1599 (Oct. 29, 1998), the mother was found in contempt when the daughter failed to call her father pursuant to the parties' agreement. However, the circumstances surrounding mother's contempt and the terms of the parties' agreement was not clear in *Eichenberger*, as the issue was only briefly discussed in relation to a best-interest analysis. In the present case, while we

would hope mother would encourage a relationship between father and the child, given the non-specific terms of the agreed entry and the lack of a transcript, we can find no error.

{¶ 46} Father next argues the magistrate erred when she found mother failed to encourage the child to attend visitation on four occasions but did not find her in contempt. Although father does not specify about which of his contempt motions he is complaining, he points to the magistrate's findings that, on one occasion, mother made plans for a family trip for the rest of the family during a scheduled visitation and told the child prior to the exchange that he could go or not go on the visit with father, and the child refused to go on the visitation. The magistrate explained that, while mother did not encourage the child to visit father on this occasion, she also did not directly interfere. The magistrate found mother did not follow the spirit of the entry but followed the letter of the entry; thus, she found mother not in contempt. The magistrate noted that the parties should modify the existing order to include more specific language regarding the responsibilities of each parent. We agree with the magistrate. Despite father's argument to the contrary, the agreed entry does not contain any order that mother "encourage" the child to participate in visitation. In the above instance, while mother made visitation with father less attractive, she made the child available for visitation but the child refused, and father and the child made alternate plans. Mother did not disobey the court order. For these reasons, we overrule father's ninth assignment of error.

{¶ 47} Father argues in his tenth assignment of error the trial court violated his fundamental due process and equal protection right when it reduced his parenting time from one weekend per month to one weekend per quarter without a showing of unfitness or abuse. However, many of father's arguments are impossible to review without a full transcript of the proceedings. The important issues involved in making such a determination are too dependent upon the testimony at trial to make a determination based solely on exhibits and case law. Therefore, we cannot address father's argument in this respect.

{¶ 48} With regard to the specific question of whether a trial court violates a parent's due process and equal protection rights when it reduces parenting time without a showing of unfitness or abuse, father fails to cite any authority for such a general

proposition. A determination to reduce a parent's parenting time from a prior order is necessarily case and fact specific based on the "best interest of a child" factors listed in R.C. 3109.04(F)(1) and (2) and the parenting time factors listed in R.C. 3109.051(D). As this court has held, in order to further a child's best interest, a trial court has the discretion to limit parenting time rights. *Lumley v. Lumley*, 10th Dist. No. 09AP-556, 2009-Ohio-6992, ¶ 17, citing *Moore v. Moore*, 5th Dist. No. 04CA111, 2005-Ohio-4151, ¶ 7; *Hoppel v. Hoppel*, 7th Dist. No. 03 CO 56, 2004-Ohio-1574, ¶ 15; *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, ¶ 18 (7th Dist.) Trial courts may restrict the time and place of visitation, determine the conditions under which parenting time will take place, and deny parenting time rights altogether if parenting time would not be in the best interest of the child. *Id.* Therefore, we reject father's argument.

{¶ 49} Additionally, although father complains the trial court failed to timely rule on numerous motions and delayed hearing dates, these arguments are not included in his stated assignment of error. Because we determine appeals based on assignments of error, not mere arguments, we decline to address this argument. *See Evans v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-713, 2019-Ohio-3788, ¶ 11, fn. 2, citing App.R. 12(A)(1)(b); *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9.

{¶ 50} We also note father's final argument that the trial court abused its discretion when it failed to grant him custody of the child based on mother's parental alienation was not raised as a specific assignment of error. As explained above, we determine appeals based on assignments of error, not mere arguments. Notwithstanding, this important issue, too, is highly dependent on testimony, and we cannot address it without a transcript of the proceedings. For the above reasons, we overrule father's tenth assignment of error.

{¶ 51} Accordingly, we overrule father's first, second, third, fourth, fifth, sixth, ninth, and tenth assignments of error, we sustain in part and overrule in part father's seventh assignment of error, and render moot father's eighth assignment of error. Therefore, we affirm in part and reverse in part the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. We remand this matter to that court to recalculate father's child support obligation from May 4, 2014

through April 26, 2016 as found in magistrate exhibit 1, to include mother's contributions to STRS in her gross income.

*Judgments affirmed in part;*
*reversed in part; cause remanded.*

DORRIAN and McGRATH, JJ., concur.

McGrath, J., retired, formerly of the Tenth Appellate District, Assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____